UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD,<br><br>Plaintiff,<br><br>v.<br><br>WALCZACK and DE LA HOYA,<br><br>Defendants. | No. 1:20-cv-00370-AWI-EPG<br><br>SCREENING ORDER<br><br>ORDER FOR PLAINTIFF TO:<br><br>(1) FILE A FIRST AMENDED COMPLAINT; OR<br><br>(2) NOTIFY THE COURT THAT HE WISHES TO STAND ON HIS COMPLAINT, SUBJECT TO THE COURT ISSUING FINDINGS AND RECOMMENDATIONS TO A DISTRICT JUDGE CONSISTENT WITH THIS ORDER<br><br>(ECF NO. 1)<br><br>THIRTY DAY DEADLINE |

Plaintiff William J. Gradford ("Plaintiff") is a former inmate proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on March 11, 2020. (ECF No. 1). The Complaint brings claims against two of Plaintiff's parole officers, Defendants Walczack and De La Hoya ("Walczack" and "De La Hoya", respectively). He alleges that they retaliated against him for his decision to file separate civil rights lawsuits. The Court finds that the Complaint fails to state any cognizable claims.

1

After Plaintiff reviews this order, Plaintiff can decide to file an amended complaint, which the Court will screen in due course. Plaintiff can also notify the Court that he wants to stand on his complaint, in which case this Court will issue findings and recommendations to the district judge assigned to the case recommending that Plaintiff's complaint be dismissed for the reasons in this order. If Plaintiff does not file anything, the Court will recommend that the case be dismissed.

## I. SCREENING REQUIREMENT

The Court is required to screen complaints brought by inmates seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the inmate has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis*, the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc*., 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal

pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

## II.     ALLEGATIONS IN THE COMPLAINT

Plaintiff's complaint alleges as follows:

Plaintiff was released from prison on November 12, 2018. A week before, he told Stanislaus County probation officers in a pre-release interview that he was extremely concerned that he would be retaliated against upon release. Plaintiff feared for his life, safety, and well-being because when he was at the Stanislaus County Jail, deputies there retaliated against him and gave him death threats. They did so because he reported Deputy Tiexiera for throwing an inmate against the wall while he was having a seizure. He was retaliated against by Tiexiera and another deputy, McCarthy. That incident is the subject of a different lawsuit in the Eastern District of California. Plaintiff's mother tried to get him not to sue the deputies because they know Plaintiff's brother, who is a defense attorney.

After Plaintiff's release, he met his new probation officer, De La Hoya.[1] De La Hoya strongly indicated he knew Plaintiff's brother. Plaintiff told De La Hoya about his fears concerning retaliation. Plaintiff was particularly afraid because Stanislaus In House Sheriff Deputies have a history of being violent towards inmates.

Plaintiff asked for a transfer out of Stanislaus County but he was refused. De La Hoya became agitated and quickly changed the subject. De La Hoya listed Plaintiff as a transient because he was homeless and told Plaintiff to check in once a week.

Plaintiff has various mental and physical health issues that are in his probation file, including schizophrenia, chronic depression, and delusions, and a history of drug abuse. De La Hoya asked Plaintiff to sign a form to be placed into drug-related classes that were required by court order. But probation never forced him to attend those classes. Instead, Plaintiff became homeless, started to abuse drugs and alcohol, and had his mental health deteriorate. Plaintiff called De La Hoya and asked for help many times, but De La Hoya did not respond. De La Hoya

---

[1] At times, Plaintiff spells this name DeLahoa. The Court will spell the name "De La Hoya" as that is how Plaintiff spells Defendant's name in the caption.

3

did not make Plaintiff go to the classes. De La Hoya did not place Plaintiff in the classes. Instead, De La Hoya had Plaintiff sign the paperwork for classes to cover up the record.

Plaintiff began to show up at the probation office to meet with De La Hoya but he was always told that De La Hoya was either away or unavailable. De La Hoya never called Plaintiff back.

On December 28, 2018, Plaintiff was falsely accused by his ex-wife and was arrested. He was given an ankle monitor. Plaintiff never put a hand on her. He received a stay-away order.

When Plaintiff was signing ankle monitor paperwork, De La Hoya made intimidating gestures and did not answer any of Plaintiff's questions. Plaintiff was released on bail on February 9, 2019. He was on an ankle monitor only because of his ex-wife's false accusations. Plaintiff sought treatment for his mental health, drug and alcohol issues and repeatedly asked De La Hoya for help. De La Hoya did not return Plaintiff's calls or messages. De La Hoya did not place Plaintiff in any of the court-required classes. Plaintiff also alleges he saw De La Hoya once a week, but De La Hoya refused to help Plaintiff then.

A different probation officer ("Non-Defendant Probation Officer") called Plaintiff and asked whether he was serious about getting help and going to a program. Plaintiff said yes. Non-Defendant Probation Officer gave Plaintiff a phone number to call. He did so and was told he could go to the program. Plaintiff spoke with the program's director. He asked to be picked up by the program because he had no way to get there. The director said yes. Then he asked whether in his spare time he could work on his various civil cases filed in this district. The director said yes but to call back in 15-20 minutes.

Plaintiff called Non-Defendant Probation Officer and told her what happened. She said to call her back in 20 minutes. Plaintiff said okay.

Plaintiff then called the director back. The director said he could not pick Plaintiff up. Plaintiff asked why but the director did not give an answer and hung up.

Plaintiff called Non-Defendant Probation Officer. Plaintiff asked to be taken to the program. She said no. But then she said to call her back in 15 minutes. Plaintiff repeatedly did so but he could not get in touch with her. Plaintiff also tried calling De La Hoya but did not receive a

Case 1:20-cv-00370-AWI-EPG   Document 12   Filed 08/06/20   Page 5 of 11

response from him either. Plaintiff lost all hope.

Plaintiff alleges this state of affairs was due to De La Hoya retaliating against him because of the multiple lawsuits in this district court that Plaintiff had filed against Stanislaus County In House Sheriff Deputies.

On April 6, 2019, Plaintiff was transferred to Walzack, who became Plaintiff's new probation officer. Plaintiff had previously filed a citizen complaint against De La Hoya and Walzack. Walzack asked Plaintiff to keep him updated as to the status of Plaintiff's various federal lawsuits. Plaintiff sought to have his ankle monitor removed but was denied; Walzack told Plaintiff to wait until his next court date. Walzack, like De La Hoya, had Plaintiff sign paperwork about attending drug-related classes but never had Plaintiff attend such classes. Plaintiff repeatedly called Walzack to ask for help, but Walzack did not return the calls.

Plaintiff was the victim of many death threats and attempted set-ups. He received many death threats on his phone. On one occasion, a childhood friend tried to set him up to be killed. Plaintiff again sought a transfer out of Stanislaus County but was refused. Walzack did not help Plaintiff with respect to the external threats Plaintiff faced.

Plaintiff's mother took Plaintiff's legal paperwork and gave it to Plaintiff's brother. They will not give it back. Walzack was unconcerned by this.

Plaintiff was placed in a home and received mental health therapy treatment from the county. The home was filthy and crowded, and there were drugs and alcohol in it. Plaintiff showed evidence of the drugs to Walzack and asked him to remove Plaintiff from the house. Walzack was unconcerned and told Plaintiff to stay there until the next week.

Plaintiff's case manager placed him in another home. But there was alcohol there too. Plaintiff showed evidence of this to Walzack and asked to be put in an inpatient drug program. Walzack refused. Plaintiff began using drugs and alcohol again. Plaintiff asked again for help, to remove his ankle monitor, but was again denied.

Walzack had copies of Plaintiff's lawsuits filed in this district against Stanislaus County in-house sheriff deputies.

Shortly before Plaintiff was to enter an in-patient drug program called Nirvana, Plaintiff

5

called Walzack to tell him his whereabouts. Walzack came over and conducted a search and he found empty bottles of alcohol. Walzack drove Plaintiff to the probation office and let him go with his stuff but refused to help Plaintiff. Plaintiff connected with Walzack on a phone call. He asked to go to a Salvation Army treatment program in Stockton for six months. Walzack said he would call Plaintiff back but never did.

On May 20, 2019 Plaintiff was picked up by his case manager and admitted to a 60-day in-patient drug program. He completed it. He was placed in a 90-day outpatient program and completed that too. Plaintiff also completed various education certificates and was sober for about seven months. Still, Walzack did not remove his ankle monitor. Plaintiff took a plea deal. Walzack told Plaintiff he would remove it after Plaintiff showed up to serve his sentence.

Walzack's supervisor Tracie interviewed Plaintiff about the citizen complaint Plaintiff had filed. She attempted to twist Plaintiff's words. This was all based on the death threats Plaintiff received from deputies Tiexiera and McCarthy related to actions Plaintiff filed in this district. Plaintiff fears for his life and safety due to the retaliation.

**III.    SECTION 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or

6

federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*,

885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### IV.     ANALYSIS OF PLAINTIFF'S RETALIATION CLAIM

#### A.     Legal Standard for First Amendment Retaliation Claims

> To state a First Amendment retaliation claim, a plaintiff must plausibly allege that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct. To ultimately prevail on such a claim, a plaintiff must establish a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury. Specifically, a plaintiff must show that the defendant's retaliatory animus was a but-for cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Capp v. Cty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (internal quotation marks and citation omitted).

#### B.     Analysis of Claims Against De La Hoya

Plaintiff claims the underlying conduct causing the retaliation is his decision to file lawsuits. Prisoners' filing civil rights lawsuits is constitutionally protected. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) ("Of fundamental import to prisoners are their First Amendment rights . . . to pursue civil rights litigation in the courts." (internal quotation marks and citations omitted)).

Plaintiff, however, does not sufficiently allege facts demonstrating that De La Hoya's actions were done in retaliation for Plaintiff filing civil rights lawsuits. Plaintiff alleges that De La Hoya strongly indicated he knew Plaintiff's brother, who disapproved of Plaintiff's lawsuits. Plaintiff also alleges that Plaintiff told De La Hoya about his fears of retaliation.

However, Plaintiff does not allege any facts that, if true, would demonstrate that De La

Hoya acted in retaliation for Plaintiff exercising his constitutional rights. Plaintiff does not allege that De La Hoya ever mentioned the lawsuits to Plaintiff or told him to drop the lawsuits. He does not allege that De La Hoya told Plaintiff's brother to tell him to drop the lawsuits. He does not allege that De La Hoya said in any way that he was treating Plaintiff differently because Plaintiff filed lawsuits. Instead, Plaintiff stated his conclusion that De La Hoya was acting in retaliation in violation of Plaintiff's constitutional rights. Even construing all facts in Plaintiff's favor, this conclusion is not sufficient to state a claim for retaliation under the First Amendment.

### C. Analysis of Claims Against Walzack

Plaintiff's claims against Walzack are substantially similar to those against De La Hoya. Plaintiff alleges that he undertook conduct protected by the First Amendment: filing civil rights lawsuits. He alleges that Walzack did not satisfactorily perform his duties as Plaintiff's probation officer. However, for the same reasons Plaintiff's allegations against De La Hoya fail, so do Walzack's. He does not allege facts which, if true, would show that Walzack treated him poorly as a probation officer in retaliation for Plaintiff exercising his constitutional rights. For example, Plaintiff does not allege Walzack ever mentioned the lawsuits to him. He does not allege Walzack ever told Plaintiff, directly or indirectly, to drop the lawsuits. Just as Plaintiff's claims against De La Hoya are conclusory and insufficient, so too are Plaintiff's claims against Walzack.

## V. CONCLUSION AND ORDER

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claim.

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff with time to file an amended complaint, so that Plaintiff can provide additional factual allegations. *Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Plaintiff is granted leave to file an amended complaint within thirty days.

If Plaintiff chooses to amend his complaint, in his amended complaint he must state what each named defendant did that led to the deprivation of his constitutional or other federal rights. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Plaintiff has a choice on how to proceed. Plaintiff may file an amended complaint if he believes that additional true factual allegations would state cognizable claim(s). If Plaintiff files an amended complaint, the Court will screen that complaint in due course. Alternatively, Plaintiff may choose to stand on his complaint subject to the Court issuing findings and recommendations to a district judge consistent with this order.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Within **thirty (30) days** from the date of service of this order, Plaintiff shall either:
   a. File a First Amended Complaint that includes additional true factual allegations, if Plaintiff believes that additional allegations would state cognizable claim(s); or
   b. Notify the Court in writing that he wants to stand on this complaint, in which case the Court will issue findings and recommendations consistent with this order to a district judge;
2. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "First Amended Complaint" and refer to case number 1:20-cv-00370-AWI-EPG; and

\\\
\\\

3. <u>Failure to comply with this order may result in the dismissal of this action.</u>

IT IS SO ORDERED.

Dated:   **August 5, 2020**                              /s/ Erica P. Grosjean
                                                         UNITED STATES MAGISTRATE JUDGE