UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM J. GRADFORD,<br><br>            Plaintiff,<br><br>     v.<br><br>WALCZACK and DE LA HOYA,<br><br>            Defendants. | No.  1:20-cv-00370-AWI-EPG<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>(ECF NO. 14)<br><br>THIRTY DAY DEADLINE |

Plaintiff William J. Gradford ("Plaintiff") is a former inmate proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed the Complaint commencing this action on March 11, 2020. (ECF No. 1). The Court screened Plaintiff's complaint, found no cognizable claims, and gave Plaintiff leave to amend on August 6, 2020.  (ECF No. 12).  Plaintiff filed a First Amended Complaint on August 21, 2020, (ECF No. 14), which is before this Court for screening.

For the reasons described below, the Court recommends that the complaint be dismissed with prejudice. Plaintiff may file objections to these findings and recommendations within thirty days from the date of service of this order.

1

## I.  SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis*, the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.  PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint if fifty-two pages long.  Plaintiff does not specify any legal causes of action.  Where the form complaint states "State the constitutional or other federal civil right that was violated," Plaintiff wrote "not sure/request that the court decide (please)."  (ECF No. 14, at p. 6).  Where the form includes various types of civil rights, Plaintiff checked the box for "other" and wrote "failure to do duty as probation officer, etc."  Plaintiff includes two claims like this: one for probation officer De La Hoya and one for probation officer Walczack.

Plaintiff's First Amended Complaint begins by describing how he was released on probation on November 12, 2018.  His probation officer was Officer De La Hoya.  Plaintiff returned to his home with his ex-wife and four children.  Plaintiff then describes over several pages finding evidence of his ex-wife's infidelity and resulting fights and attempts at reconciliation.  *See, e.g.,* ECF No. 14, at p. 14 ("I would constantly cry and our 4 children would constant see me cry.  I didn't way my children affected in any way.").  At some point, Plaintiff's ex-wife called 911 and alleged that Plaintiff had drugged her, pulled her by her hair, and stole her car.  Plaintiff was falsely arrested and was transported to jail.  Plaintiff was in great distress and denied the allegations.  Plaintiff was booked at the Stanislaus Public Safety Center on domestic violence and car theft charges.

The next day, Plaintiff's probation officer, De La Hoya, came to the jail.  He was angry and intimidating and told Plaintiff he was putting an ankle monitor on Plaintiff.  Plaintiff denied the allegations, but eventually signed the form for the ankle monitor.

Plaintiff then describes the circumstances of raising bail with the help of his mother.

When Plaintiff was set to be released, Officer De La Hoya put the ankle monitor on

Plaintiff and reviewed probation rules and requirements. The whole time "he intimidated and mistreated" Plaintiff. Plaintiff told Officer De La Hoya that Plaintiff feared for his life, safety, and well-being. Plaintiff described an incident in 2016 when Plaintiff reported on in-house sheriff deputies for using force on another inmate. Plaintiff believes that the deputy retaliated against Plaintiff for reporting his misconduct. After describing these past events, Plaintiff asked Officer De La Hoya for a transfer out of the Stanislaus County area. Officer De La Hoya denied Plaintiff's request.

Officer De La Hoya told Plaintiff he was listing Plaintiff as a transient because Plaintiff was homeless. Officer De La Hoya told Plaintiff to check in once a week. Plaintiff again said he feared for his life and requested a transfer, but his request was denied.

A few days later, Plaintiff explained on Officer De La Hoya's voicemail that Plaintiff was being retaliated against, but Officer De La Hoya did not return his call.

Plaintiff started getting death threats on his cell pone and internet, statements like "why do you think that nobody likes you?" Plaintiff again left messages for Officer De La Hoya. Plaintiff's mental and physical condition were deteriorating. Plaintiff has been diagnosed in the past for schizophrenia, chronic depression, and drug and alcohol abuse. Plaintiff needed help getting medication. Plaintiff needed drug treatment. Plaintiff wanted to get off the streets and out of Stanislaus County. Plaintiff kept calling Officer De La Hoya, but his calls were not returned. Plaintiff got so desperate and walked into the probation office looking for Officer De La Hoya, but someone would always say that Officer De La Hoya was out and would get the message that Plaintiff wishes to see him. Once a week, Plaintiff would tell Officer De La Hoya face-to-face that Plaintiff needed help with his deteriorating mental health, his medication, and his drug treatment program because of Plaintiff's constant fear of retaliation for his many civil suits.

At one point in time, Officer De La Hoya told Plaintiff to sign a drug treatment program paper to start drug treatment classes, but Plaintiff never took the classes. Officer De La Hoya continued to allow Plaintiff to roam the streets homeless, alone, abandoned, and in fear. Finally, Plaintiff lost all hope and was in the dark crying and thinking about suicide when another probation officer from Stanislaus County called and asked whether Plaintiff still wanted a drug

1  treatment program.  Plaintiff then describes many conversations with the director of the program
2  and the probation office, including Plaintiff's requests to keep working on his various civil
3  lawsuits.  Plaintiff had no way to get to the program because he did not have any money for bus
4  or taxi and no one to help him.  It appears that neither the probation office nor director of the drug
5  program could come pick him up and that Plaintiff was unable to enroll in the program.

6  Plaintiff then describes an incident in 2016 when he filed his first civil complaint and his
7  mother visited him in jail and told him not to file the case.  Plaintiff's brother is a criminal
8  attorney in the Stanislaus County and is very well known.

9  When Plaintiff was released from prison on November 12, 2018, "they stole all my
10 paperwork and evidence from the US District Court," along with 2 years worth of other
11 paperwork.  Also, Plaintiff's mother stole his phone that would prove that his ex-wife was falsely
12 accusing him.  Plaintiff showed Officer De La Hoya many police reports of the death threats,
13 including by people who had been represented by Plaintiff's brother.  Officer De La Hoya still
14 denied Plaintiff's request to transfer.

15 Plaintiff filed a citizen complaint against him [presumably Officer De La Hoya].  But
16 when his supervisor interviewed Plaintiff, she twisted Plaintiff's words around.

17 Plaintiff still has an ankle monitor and probation refuses to remove it after many requests.
18 Plaintiff had not been in any trouble.  Plaintiff has also complained to Officer De La Hoya's
19 supervisor on the phone, but she got upset with Plaintiff.

20 Regarding Officer Walczak, Plaintiff alleges that he was transferred from Officer De La
21 Hoya to a new probation officer, Officer Walczak, on April 6, 2019.  Officer Walczack went over
22 the probation rules and requirements.  Plaintiff then told Officer Walczack how Plaintiff feared
23 for his life, safety and well-being, and how he was experiencing retaliation.  Plaintiff gave Officer
24 Walczack copies of police reports.  Plaintiff told Officer Walczack about the threat he received in
25 2016 from Stanislaus County Sherriff Deputies for reporting abuse about another inmate.
26 Plaintiff then describes the multiple lawsuits he has filed in this district.  Officer Walczack told
27 Plaintiff to keep him updated regarding Plaintiff's lawsuits against Stanislaus County in-house
28 sheriff deputies.  Plaintiff gave Officer Walczack copies of the court's screening orders.

4

After Plaintiff had explained all of this to Officer Walczack, he quickly changed the subject and seemed unconcerned. Plaintiff asked if Officer Walczack would remove the ankle monitor that had been placed on Plaintiff when he was falsely accused. Officer Walczack said, "no. Let's see what happens at your next court date." Plaintiff explained that his ex-wife was lying. Officer Walczack still declined to remove Plaintiff's ankle monitor. Plaintiff asked to be transferred away from Stanislaus County. Officer Walczack refused his request. Officer Walczack asked Plaintiff to sign a paper to start drug treatment, but Plaintiff was not placed in drug treatment. Plaintiff later left a voicemail for Officer Walczack asking for his help getting Plaintiff off the street. Plaintiff explained his history of mental illness and drug abuse. Plaintiff left many messages at many different times but Officer Walczack did not return his phone calls. Plaintiff noticed that some of the people who would jump him on the street had been represented by Plaintiff's brother. His brother is well known by the probation office.

Plaintiff continued to complain to Officer Wolczack about the constant retaliation against Plaintiff and his need for help. Plaintiff requested immediate transfer away from Stanislaus County. But Officer Wolczack did not return his calls. Plaintiff got so desperate that he would walk into the probation office and ask for Officer Wolczack, but someone would tell Plaintiff that Officer Wolczack would get a message that Plaintiff wished to see him.

Plaintiff again shares the story of his mother visiting Plaintiff in jail in 2016 and warning Plaintiff against suing people.

Finally, Plaintiff decided to speak with a case manager. Plaintiff was finally placed in a very filthy and crowded house paid for by the county. Most of the other occupants would be up all night going in and out of the garage and making a lot of noise. Plaintiff found a drug needle. His roommate offered Plaintiff hard liquor. Plaintiff really wanted to change his life around. Plaintiff took the drug needle to Officer Walczack and told him about the liquor. Plaintiff asked to be moved out, but Officer Walczack told him to wait until next week.

A few days later, Plaintiff started drinking and using drugs. Plaintiff was transferred to another home, but there was alcohol there too. Then Plaintiff sobered up for two weeks, until his roommate started drinking in front of Plaintiff and playing his video games. Plaintiff took

pictures of the alcohol and told Officer Walczack and asked to be transferred out of Stanislaus County.

A few days later, Plaintiff started using drugs and drinking alcohol again. Plaintiff called Officer Walczack and left messages asking to go to a different drug treatment program run by the Salvation Army, but Officer Walczack did not return his call. Finally, when they spoke on the phone, Officer Walczack said he would call Plaintiff back, but never did.

Plaintiff became depressed and rented a motel room for the night. He called and left a message with Officer Walczack explaining that he was at the hotel and was depressed. The next morning, Officer Walczack and a co-worker female probation officer knocked on the hotel door. Plaintiff opened it and was handcuffed by Officer Walczack. Officer Walczack searched the room and asked about all the empty alcohol bottles. Officer Walczack took Plaintiff to his patrol unit and took off Plaintiff's handcuffs and said he was free to go again.

In the past, Plaintiff had complained to Officer Walczack's supervisor on voicemail and she returned Plaintiff's call. Plaintiff told her about Officer Walczack's mistreatment of him. His supervisor seemed unconcerned. Plaintiff filed a citizen complaint against Officer Walczack.

On May 20, 2019, Plaintiff's case manager put Plaintiff in a 60-day in-patient drug program. Plaintiff successfully completed it. Plaintiff then completed a 90-day outpatient drug treatment program. He also completed an extra two months in the program. Plaintiff also completed various education certificates and was sober for about seven months. Plaintiff continued to prove himself to probation and fulfill all the requirements of probation. Plaintiff kept asking for his ankle monitor to be removed, and Officer Walczack would respond that he would see what happens at the next court date.

Finally, Plaintiff took a plea deal related to his ex-wife's false charges. Plaintiff wasn't treated fairly or equally.

Once the case was over, Plaintiff asked to have his ankle monitor removed and Officer Walczack told him "I will take the ankle monitor off when you turn yourself in to serve your sentence at the jail."

Plaintiff filed a citizen complaint against Officer Walczack and Officer De La Hoya.

When he was interviewed, the supervisor kept trying to twist his words around. She got very agitated.

### III. SECTION 1983

#### A. Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs*., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d

1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

**B.     Analysis**

Plaintiff's complaint fails to state a claim under section 1983 because it fails to identify any constitutional right that was allegedly violated. Plaintiff does not name any violation of the constitution. Instead of stating the constitutional or other federal civil right that was violated, Plaintiff wrote "Not sure/request that the court consider decide (Please)." (ECF No. 14). Where the form complaint asks to identify the issue involved and lists examples such as "basic necessities," "access to the court," or "exercise of religion," Plaintiff has written "failure to do duty as probation officer, etc." This does not state a violation of the constitution or any other federal right.

Moreover, Plaintiff's complaint does not allege facts that would give rise to a violation of his constitutional rights. Plaintiff alleges generally that his probation officers failed to give him enough help to stop abusing drugs and get off the streets. Plaintiff does not allege that defendant probation officers violated any rule applying to probation officers, not to mention any constitutional right. Plaintiff does not have a constitutional right to general assistance from his probation officers, such as drug programming and housing assistance. Although Plaintiff believes his probation officers did not provide him adequate assistance, this does not state a cause of action under federal law.

Plaintiff's allegation regarding the ankle monitor also does not state a federal claim. Plaintiff alleges that his probation officers left his ankle monitor on until "you turn yourself in to serve your sentence at the jail." There is no allegation that this violated the terms of Plaintiff's probation or release, nor any constitutional right.

**IV.    CONCLUSION, ORDER, AND RECOMMENDATIONS**

The Court has screened Plaintiff's complaint and finds that it fails to state any cognizable claim.

The Court recommends dismissal of this action with prejudice for failure to state a claim without leave to amend. Plaintiff has been given one opportunity to amend his complaint with

appropriate legal standards.  Plaintiff has set forth a detailed account of the facts at issue, yet they do not state a claim under the constitution or any federal law.  Thus, further amendment would be futile.

Accordingly, the Court RECOMMENDS that:

1. The Complaint be DISMISSED, WITH PREJUDICE, for failure to state a claim upon which relief may be granted; and
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these findings and recommendations, Plaintiff may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **October 7, 2020**                    /s/ Erica P. Grosjean
                                               UNITED STATES MAGISTRATE JUDGE

9